UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TODD WIESS, CHRIS HEATHERLY, PEGGY HUBARD, EVAN BURNS, and PATRICK JACKSON,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>VILLAGE OF BROOKLYN, VILLAGE OF BROOKLYN POLICE DEPARTMENT, CHIEF OF POLICE HAROLD JOHNSON, in his individual and official capacities, and MAYOR NATHANIEL O'BANNON, III,<br><br>　　　　　Defendants. | Case No. 07-cv-473 -JPG |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants's Motion for Summary Judgment (Doc. 30). Plaintiffs Todd Weiss and Chris Heatherly have Responded (Doc. 34). Defendants have Replied (Doc. 36). For the following reasons, the Court GRANTS the Motion.

### **BACKGROUND**

As an initial matter, the Court notes that neither party has complied with the rules requiring citations to admissible evidence in support of their arguments. Defendants submitted a separate statement of facts with citations to the record, but failed to connect the cited facts to the arguments made in the separate memorandum in support of their motion. Plaintiffs, meanwhile, merely directed the Court's attention to Plaintiffs's Responses to Supplemental Interrogatories. These responses are both rambling and vague, using minimal punctuation and supplying little detail. In addition, the responses are signed only by Plaintiffs's attorney, not by either Plaintiff.

The Court must remind counsel that it is not its job to do counsel's work of organizing or

1

formulating a party's arguments, *United States v. McClellan*, 165 F.3d 535, 550 (7th Cir. 1999), nor is it the Court's function to "scour the record in search of evidence to defeat a motion for summary judgment." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F. 3d 560, 562 (7th Cir. 1996). "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Nevertheless, in an attempt to ensure that justice is served, the Court has undertaken the herculean effort of making sense out of both the Motion and the Response thereto.

**I.      Standard**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.,* 211 F.3d 392, 396 (7th Cir. 2000). The Court construes all facts in the light most favorable to the nonmoving party and draws all justifiable inferences in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Spath,* 211 F.3d at 396.

The moving party has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 323. Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992). If it meets this burden, the nonmoving party must set forth facts that demonstrate the existence of a genuine issue of material fact. Fed.R.Civ.P. 56(e); *Celotex,* 477

U.S. at 322-26; *Johnson v. City of Fort Wayne,* 91 F.3d 922, 931 (7th Cir. 1996). The nonmoving party must do more than cast "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir. 2000). Rather, the nonmoving party must demonstrate to the Court that the evidence is such that a reasonable jury could return a verdict in his favor. *Anderson,* 477 U.S. at 248; *Insolia v. Phillip Morris, Inc.,* 216 F.3d 596 (7th Cir. 2000). Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *Anderson,* 477 U.S. at 248-250.

## II. Facts

Taken in the light most favorable to Plaintiffs, the record establishes the following facts. Plaintiffs Chris Heatherly (Heatherly) and Todd Weiss (Weiss) were both employed by the Village of Brooklyn (the Village) as police officers. Heatherly worked in investigations. His primary duties included investigating crimes and applying for arrest and search warrants. He also served as commander of the special response team, conducting drug interdiction operations, prostitution stings, gambling interdiction operations, and serving arrest warrants. Additionally, he instituted a neighborhood watch program.

Weiss came to the Village as a part-time officer in June 2005, after having completed training at the police academy in St. Louis, Missouri. Weiss was unable to attend a police academy in Illinois because he could not successfully complete the "Power Test," a physical fitness test that is a required prerequisite to admission to an Illinois academy. Missouri police academies do not require entrants to pass such a test. In order to become a certified officer in Illinois, Weiss needed to request, through his employer, a waiver of the minimum Illinois

3

training standards.  Additionally, he needed to pass, within a certain amount of time, a firearms course, a Law for Police training course, and an equivalency exam.  The Village's acting Chief of Police, Jerome Young, applied for the waiver for Weiss.  Weiss passed the firearms test.  However, Weiss twice failed the Law for Police course, and as a result, was unable to sit for the equivalency exam.  On August 12, 2005, two citizen complaints were filed against Weiss.

In October 2005, Harold Johnson (Johnson) was appointed as Chief of Police for the Village, and acting-Chief Young stepped down to a position as Captain.  When he came on, Johnson promised Weiss that Weiss could become a full-time, rather than part-time, police officer for the Village.  Almost immediately upon his arrival, friction arose between Chief Johnson and his officers.  Johnson made scheduling changes, resulting in Weiss having to work double shifts and an unsafe number of hours.  He ignored requests for office supplies, including necessary bond forms.  He ignored requests for repairs to patrol vehicles, to the point where officers feared for their own safety.  Johnson also failed to inform the officers of the dates and times that they were scheduled to testify in court.  Additionally, Johnson often gave conflicting orders, then berated his officers for failing to comply with one order or the other.  For example, Heatherly was told he could not leave the station but was then criticized for not going to the courthouse to apply for warrants.  Officers were told to clear every decision through Johnson before taking any action, but were angrily told not to contact Johnson when he was off-duty.  Johnson told Heatherly to submit proposed drug interdiction patrols in writing, then got angry at Heatherly for not discussing the proposals with him verbally instead.  Weiss and Heatherly were called in unexpectedly for the same shift, then scolded for showing up for a shift for which they were not scheduled.

Johnson also accused his officers of corruption. Both Johnson and Village Mayor Nathaniel O'Bannon III (O'Bannon) believed the officers were stealing the gasoline intended for the patrol vehicles for their personal use. At one point, O'Bannon and Johnson pulled up in a pickup truck to the department gas pump while Weiss and Heatherly were fueling their patrol cars, and O'Bannon videotaped them. Johnson told his officers that he was recording every conversation they had with him. Johnson also cancelled the drug interdiction and other special response team operations, and cancelled the neighborhood watch program without giving a reason for the cancellations. Some officers believed that at times Johnson was intoxicated while on duty.

In October, Johnson called an interdepartmental meeting, attended by O'Bannon, to discuss changes he wanted to implement to department procedures. During the course of the meeting, several of the officers, including Weiss and Heatherly, brought up their concerns with the way Johnson was running the police department. Johnson addressed some of the issues raised, but not others. For example, he promised to implement a procedure to ensure that officers were informed of their court dates. But, Johnson did not follow through, and the procedures were never implemented.

When Heatherly and Weiss complained to O'Bannon, Johnson accused them of insubordination and of attempting to circumvent his authority. O'Bannon told Heatherly to "follow his chain of command", and that he would not discuss Heatherly's problems with the way Johnson was running the department unless Johnson was present as well. However, Johnson refused to accompany Heatherly to O'Bannon's office. Johnson suspended Weiss from December 18, 2005, to December 20, 2005 for insubordination because Weiss was taking his

concerns over Johnson's head to O'Bannon. He threatened to suspend Heatherly for the same reason, but did not follow through.

Heatherly and Weiss both felt that it was part of their duties as police officers to attempt to improve the running of the department by taking their complaints up the chain of command. Therefore, they took their concerns to the Village Board of Trustees and to the Citizen Police Review Board. The members of the Citizen Police Review Board indicated that they were unable to do more than make recommendations to O'Bannon, and they had already done that. One of the trustees on the Village Board told Heatherly that the Board was attempting to get O'Bannon "to maybe pull the chief back a little." In December Weiss and other officers tried to speak at a public Board of Trustees meeting, but O'Bannon refused to let them speak because they were not on the meeting's agenda.

At a different meeting of the Board of Trustees, O'Bannon accused Heatherly of violating the law when he arrested a friend of O'Bannon's. The trustees asked for Heatherly's version of the story. Heatherly explained that he told two patrol officers to tow a car abandoned by a suspect in a domestic dispute. When the suspect went to retrieve his car, he was arrested. No action was taken against Heatherly after the incident or after speaking about it at the Village Board meeting.

Sometime prior to January 13, 2006, Heatherly took his complaints to the media, contacting both Channel 5 News and the Metro-East Division of the Post-Dispatch. Heatherly does not know if O'Bannon or Johnson ever found out that he was speaking to the media while he still worked for the Village. On January 13, 2006, out of frustration with Johnson and the working conditions at the police department, Heatherly resigned his position with the Village.

O'Bannon accepted Heatherly's resignation that same day. On January 17, 2006, O'Bannon placed Heatherly on paid administrative leave until Heatherly's employment terminated on January 27, 2006.

Meanwhile, between December 30, 2005 and January 4, 2006, four citizens filed written complaints against Weiss. Two of the four citizens told Weiss they had filed the complaints at the instigation of O'Bannon and Johnson. Then, on January 10, 2006, Weiss submitted a complaint to the Illinois Department of Labor regarding the condition of some of the patrol vehicles. Also on January 10, 2006, Weiss submitted a claim for unpaid wages, including overtime. Although he indicated on both forms that he did not want his name revealed to his employer, in February 2006, O'Bannon questioned Weiss about his claim for unpaid wages. Also in January, 2006, Weiss filed a report with the State's Attorney and with the FBI regarding some bond sheets that were missing.

On January 17, 2006 the Village placed Weiss on paid administrative leave and informed him that the Village Board would conduct a hearing about the citizen complaints against him at the Board's meeting on January 20, 2006. The record is confused as to when the meeting was actually held. The Village contends it was held as scheduled on January 20. Weiss contends it was postponed to a later, unspecified, date. At any rate, at some time in January, Weiss attended a public Village Board meeting with his attorney. Channel 5 News was also at the meeting. One of the complainants against Weiss told her story to the Board. Weiss then attempted to inform the Board about Johnson's intoxication while on duty, but the Board cut him off after about half a sentence and would not allow him to speak. The rest of the meeting was held in a closed session.

On January 22, the Village placed Weiss on paid administrative leave pending a termination hearing. In February, Weiss's attorney addressed the Village Board at an open meeting in an unsuccessful attempt to get Weiss reinstated. On March 24, 2006, Johnson received a letter from the Illinois Law Enforcement Training and Standards Board indicating that Weiss had not completed all the conditions required for the Training and Standards Board to approve his pending waiver application. The letter stated, "Failure to meet this condition in a timely manner may cause the denial of the waiver application. This officer's waiver application will be denied in the very near future for failure to meet the condition of the waiver." The letter did not give a date by which Weiss had to complete the outstanding conditions. The Village terminated Weiss's employment in April of 2006, purportedly for failure to meet the minimum Illinois requirements, even though Weiss still had time left on his probationary period. Other Village police officers who had not completed their training requirements were not terminated. Weiss's attempts to get the Village to turn over his personnel records to him were ignored.

On May 2, 2007, Weiss, Heatherly, and three other Village police officers who are no longer parties to this action filed a Complaint against the Village, the Village Police Department, Johnson, individually and in his official capacity, and O'Bannon, individually and in his official capacities. In Count I Weiss brings a section 1983 claim, alleging that he was terminated in retaliation for exercising his First Amendment rights to free speech. In Count II, both Plaintiffs bring state law claims of retaliatory discharge. In Count III, Weiss brings a claim of failure to pay overtime wages and past due wages. In Count IV, Weiss brings a state law claim of promissory estoppel. In Count VII, Heatherly brings a section 1983 claim, alleging that he was retaliated against for exercising his First Amendment rights to free speech. In Count VIII, Weiss

and Heatherly bring a defamation claim against Johnson. Finally, in Count IX, Weiss brings claims for violations of the Illinois Freedom of Information Act, the Illinois Sunshine Act, and the Illinois Personnel Record Review Act. After discovery was conducted, Defendants filed the instant Motion for Summary Judgment on all claims.

## ANALYSIS

### I. All Claims Against Defendant Johnson

Defendants contend that Plaintiffs have failed to serve Defendant Harold Johnson within 120 days after the filing of the complaint, as prescribed by Federal Rule of Civil Procedure 4(m). Plaintiffs have offered no response to this contention and a review of the Court's docket sheet shows no indication that Defendant Harold Johnson was served. Therefore in accordance with Rule 4(m), the Court dismisses all claims against Defendant Harold Johnson.

### II. All Claims Against Defendant Village of Brooklyn Police Department

Defendants contend that the Village of Brooklyn Police Department is not a legal entity and, therefore, cannot be sued. Under Fed.R.Civ.P. 17(b), the Court looks to Illinois law to determine if a defendant possesses the capacity to be sued. In Illinois a defendant possesses the capacity to be sued if it has a legal existence, either natural or artificial. *DeGenova v. Sheriff of DuPage County*, 209 F.3d 973, 977 n.2 (7th Cir. 2000); *Jackson v. Village of Rosemont*, 180 Ill.App.3d 932, 937-38, 536 N.E.2d 720, 723 (1st Dist. 1988). A police department in Illinois has no independent existence subjecting it to suit. *Jackson v. Cook County Sheriff Police Dept.*, 2004 WL 2632927 (N.D. Ill. 2004), *Ford v. Wilson*, 1994 WL 716309 (N.D. Ill. 1994); see also, *Montgomery v. City of Collinsville Police Dept.*, 2006 U.S. Dist. LEXIS 49058 (S.D. Ill. 2006). Therefore, the Plaintiffs's claims against the Village of Brooklyn Police Department cannot be

maintained. Accordingly, the Court dismisses those claims.

### III. State Law Claims

#### A. Retaliatory Discharge

Defendants contend that Plaintiffs are time barred from bringing their state claims for retaliatory discharge and promissory estoppel because they did not initiate this action with one year of the date that those causes of action accrued. The Local Governmental and Governmental Employees Tort Immunity Act provides:

> (a) No civil action other than an action described in subsection (b) [patient care claims] may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued.

745 ILCS 10/8-101

Here, Defendants terminated Plaintiff Weiss's employment on April 3, 2006, and Plaintiff Heatherly resigned his employment on January 13, 2006 with an effective date of January 27, 2006. Plaintiffs initiated this suit on May 2, 2007, outside the one year statute of limitation. Therefore, Plaintiffs's state claims of retaliatory discharge are untimely.

#### B. Open Meetings Act

Defendants contend that Defendant Weiss's claim that the Village violated the Open Meetings Act is time barred. Under the provisions of the Open Meetings Act, an action alleging non-compliance with the Act must be brought within 60 days of the meeting. 5 ILCS 120/3(a). Here, the meeting that Plaintiffs claim did not comply with the Open Meetings Act was held in January, 2006. This action commenced on May 2, 2007. Therefore, this claim is untimely, and

the Court will grant Defendants's Motion as to this claim.

## C. Freedom of Information Act and Personnel Record Review Act

Defendants also claim that Plaintiff Weiss has failed to exhaust his administrative remedies for both his Freedom of Information Act claim and his Personnel Record Review Act claim.

### 1. Personnel Record Review Act

An employee alleging violation of the Personnel Record Review Act must attempt resolution through the Department of Labor as a prerequisite to filing a claim in civil court. *Anderson v. Bd. of Ed. Of the City of Chicago*, 169 F.Supp.2d 864, 870 (N.D. Ill. 2001). Defendants contend Weiss did not attempt any such resolution. Weiss has submitted no evidence that he attempted a resolution of this claim through the Department of Labor prior to filing the instant suit. Therefore, the Court will grant Defendants's Motion as to this claim.

### 2. Illinois Freedom of Information Act

Weiss alleges that his request for records that he sent to the Village's attorney and to Chief Johnson were ignored. Under the Illinois Freedom of Information Act, such a failure to respond constitutes a denial of the request. 5 ILCS 140/3(c). A person denied records may appeal the denial to the "head of the public body," in this case Mayor O'Bannon. 5 ILCS 140/10. Only if the head of the public body affirms the denial or a fails to act on the appeal within seven working days, will the person making the request be deemed to have exhausted his administrative remedies and permitted to file suit. 5 ILCS 140/11. Defendants have submitted an affidavit from O'Bannon that Weiss never appealed the denial of records. Weiss has not submitted any evidence that he appealed the denial. Because Defendants have submitted

11

uncontested evidence that Weiss failed to exhaust his administrative appeals for his Illinois Freedom of Information Act claim, the Court will grant Defendants's Motion as to this claim.

IV.     **Fair Labor Standards Act**

Defendants contend that they are entitled to summary judgment on Weiss's claim against the Village for failure to pay overtime wages in violation of the Fair Labor Standards Act. The Village has submitted evidence that Weiss was paid all wages lawfully owed him. Weiss has submitted no evidence in support of his claim that the Village owes him unpaid regular wages or overtime wages. Therefore, in accordance with Rule 56 of the Federal Rules of Civil Procedure, the Court will grant Defendants's Motion as to this claim.

V.     **First Amendment Retaliation Claims**

The remaining claims are brought pursuant to 42 U.S.C. § 1983. Weiss alleges that he was fired in retaliation for exercising his First Amendment rights. Heatherly alleges that he was retaliated against for exercising his First Amendment rights. "A governmental employee may establish a prima facie case of First Amendment retaliation by showing that the speech in question: (i) is constitutionally protected; and (ii) played a substantial or motivating factor in the employer's decision to retaliate against the plaintiff." *Carren v. Ill. Dept. of Human Services*, 395 F.3d 786, 791 (2005).

   A.     **Heatherly's Speech is not Constitutionally Protected**

Defendants contend that they are entitled to summary judgment on Heatherly's section 1983 claim of retaliation because Heatherly never engaged in any protected speech. Heatherly appears to claim that the following are incidences of constitutionally protected speech for which the Defendants retaliated against him: 1) the September intra-departmental meeting with Johnson

and O'Bannon in which Heatherly complained of certain deficiencies in Johnson's management of the police department; 2) Heatherly's complaints to O'Bannon, the Village Board, and the Citizen Police Review Board about Johnson's management of the department; 3) Heatherly's complaints to the media about Johnson's management of the department.

Public employees are entitled to the free speech protections of the First Amendment when speaking as citizens on matters of public interest. *Garcetti v. Ceballos*, 547 U.S. 410, (2006). However, a public employee cannot be said to be speaking as a citizen when he is merely speaking pursuant to his official duties. *Id*. at 421. Moreover, "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick v. Meyers*, 461 U.S. 138, 147 (1983). General workplace grievances are not entitled to constitutional protection merely because the complaining employee happens to work for a public entity. *Id*.

Here, Heatherly's complaints about Johnson's mismanagement of the police department, while arguably an item of public interest, constitute nothing more than a general workplace grievance. Heatherly did not like Johnson's personal or management style. He found him abrasive, insulting, and dilatory. The media eventually took an interest in the police department's internecine feud. However, "[a]t bottom, we must decide whether the speech is most accurately characterized as an employee grievance, or as a matter of political, social, or other concern to the community." *Cygan v. Wis. Dep't of Corr.*, 388 F.3d 1092, 1099 (7th Cir. 2004). Here, it is clear that, at bottom, Heatherly's complaints are most accurately characterized

13

as employee grievances. They are not entitled to constitutional protection. Therefore, even assuming Heatherly was constructively discharged, because he engaged in no protected speech, he has failed to state a claim under 42 U.S.C. § 1983

**B.    Heatherly was not Discharged in Retaliation for his Speech**

The Court notes that Heatherly voluntarily resigned from his employment. The Court's best guess is that Heatherly intends the trier of fact to infer that he was constructively discharged by the Village in retaliation for exercising his First Amendment rights. The Court has already determined that Heatherly's speech was not protected by the First Amendment. Additionally, Heatherly has presented no evidence from which a trier of fact could reasonably conclude that any action was taken against him in retaliation for his complaints. Heatherly was clearly frustrated that his complaints about Johnson's management of the department had produced no positive results. However, Heatherly has presented no evidence that his complaints produced any negative results either. Simply put, for Heatherly, the police department became a terrible place to work, but it did not become a terrible place to work *because he spoke out*. In sum, Heatherly has failed to show any evidence his speech caused Defendants to constructively discharge him.

**C.    Weiss's Speech is not Constitutionally Protected**

Employing the same analysis used for Heatherly above, the Court concludes that Weiss's complaints about Johnson's management of the police department are not entitled to constitutional protection. However, Weiss not only aired these general employee grievances, he also made complaints to the Department of Labor about unpaid hours and unsafe equipment, and to the State's Attorney and the FBI about possible police corruption.

### 1. Department of Labor Complaints

Weiss's complaints to the Department of Labor do not qualify as constitutionally protected speech for the same reason that his complaints within his chain of command about departmental working conditions do not qualify as protected speech. Weiss complained about the condition of the equipment he was forced to use in his work and about hours he was not properly paid for. At bottom, Weiss was speaking "not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest;" therefore his complaints to the Department of Labor are not constitutionally protected. *Connick*, 461 U.S. at 147.

### 2. Police Corruption Complaints

Weiss contends that during the course of his employment with the Village, some bond sheets went missing. As the Court understands it, each bond sheet is sequentially numbered. When a person posts bond, a bond sheet is filled out and deposited in a central location along with the money paid for the bond. Weiss knew some bond sheets were missing because there was a gap in the numerical sequence. Weiss thought it was possible that someone within the department had stolen the bond sheets as well as the bond money accompanying the sheets. He claims he was fired, in part, because he reported this potential theft to the State's Attorney and the FBI. However, Weiss has presented no evidence from which a trier of fact could conclude that he engaged in protected speech or that he was retaliated against as a result of his speech.

*Morales v. Jones* is instructive as to whether Weiss's speech is constitutionally protected. 494 F.3d 590 (7th Cir. 2007). In *Jones*, a police officer received information that the police chief and deputy chief had previously harbored an individual wanted on felony warrants whom

the officer had just arrested. *Id*. at 593. The officer met with the assistant district attorney regarding the arrested individual and informed the assistant district attorney of the allegations against the chief and deputy chief. *Id*. at 594. The Seventh Circuit held that, under *Garcetti*, the officer's speech was made pursuant to his official duties and was therefore not protected. *Id*. at 597. The *Jones* court found that part of the officer's official duties was to assist the district attorneys office in the proper presentation of charges by providing details of his investigation. *Id*. at 597. Additionally, as a police officer, the plaintiff in *Jones* had a duty to report all potential crimes. *Id*. at 598. As a result, the officer was speaking pursuant to his official duties when he informed the assistant district attorney of the allegations against the chief and deputy chief. *Id*.

Similarly, here, Weiss had a general duty as a police officer to report potential crimes. Therefore, when he reported to the State's Attorney and the FBI that there was a possibility that bond money had been stolen from the Village Police Department, he was speaking pursuant to his official duties, rather than as a citizen.

Furthermore, Weiss has presented no evidence that Defendants were aware that he had reported the potential theft to the State's Attorney or the FBI. It goes without saying that if Defendants were unaware of Weiss's speech they could not have retaliated against him on the basis of it. Accordingly, Defendants are entitled to summary judgment on Weiss's section 1983 claim.

## CONCLUSION

The Court **GRANTS** Defendants's Motion for Summary Judgment (Doc. 30) on all

claims. The Clerk of Court is **DIRECTED** to enter judgment accordingly

**IT IS SO ORDERED.**
**DATED: September 9, 2008**

               s/ J. Phil Gilbert
               **J. PHIL GILBERT**
               **DISTRICT JUDGE**